# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

KEVIN SORRICK,

    Plaintiff,

    v.

WARDEN WALTER WEST,
WARDEN DEBORA DARDEN,
WARDEN WILLIAM BAILEY,
PLANT MANAGER DAN McGARITY,
MAJOR HANCE PEPPER,
LT. CLAYTON,
LT. EVAN WARD,
SGT. J. STANFORD,
SGT. J. PASSWATERS,
EMPLOYEE(S)/OFFICIALS UNKNOWN
JOHN/JANE DOE(S),
EASTERN CORRECTIONAL
INSTITUTION,
MARYLAND CORRECTIONAL
ENTERPRISES, INC.,
SECRETARY ROBERT L. GREEN,
SECRETARY CAROLYN J. SCRUGGS,
DIRECTOR F. TODD TAYLOR, JR. and
UNKNOWN JOHN/JANE DOE(S),

    Defendants.

Civil Action No.  24-0744-TDC

## MEMORANDUM OPINION

Self-represented Plaintiff Kevin Sorrick, an inmate currently confined at Eastern Correctional Institution ("ECI") in Westover, Maryland, has filed this civil action in which he alleges federal constitutional violations based on alleged retaliation for filing administrative grievances and a denial of a visit to him by his attorney. Defendants ECI, Maryland Correctional Enterprises, Inc., Secretary of the Maryland Department of Public Safety & Correctional Services

("DPSCS") Carolyn Scruggs, former DPSCS Secretary Robert L. Green, Director F. Todd Taylor, Jr., Warden Walter West, Warden William Bailey, Plant Manager Dan McGarity, Major Hance Pepper, Lt. Clayton, Lt. Evan Ward, and Sgt. J. Stanford have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Defendants Warden Debora Darden and Sgt. John Passwaters have also filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment in which they adopt and incorporate by reference both the Motion and exhibits filed by the other Defendants. After the filing of both Motions, Sorrick was specifically and separately advised of his right to file a response to each Motion and of the consequences of failing to do so, which may include dismissal of the case or the entry of judgment against him, but Sorrick did not file a memorandum in opposition to the Motions. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motions will be GRANTED.

**BACKGROUND**

## I.    Alleged Retaliation

In the presently operative Amended Complaint, Plaintiff Kevin Sorrick asserts that he was subjected to retaliation after he filed a complaint on September 25, 2018 with the United States Commission on Civil Rights relating to, among other issues, conditions of confinement at ECI and administrative remedy procedure grievances ("ARPs") filed relating to Defendant ECI and Defendant Maryland Correctional Enterprises, Inc. ("MCE"), for which Sorrick worked within the prison. Specifically, Sorrick claims that on October 24, 2018, Defendant Sgt. J. Stanford aggressively approached him while holding a copy of ARP No. ECI-2186-18, previously submitted by Sorrick, and loudly asked him about the "lies you are saying in this ARP." Am. Compl. ¶ 7, ECF No. 6-11. Referring to one of the allegations in the ARP, Sorrick told Sgt. Stanford that it

was wrong that he was not allowed to take a shower after working with chemicals in his prison job. According to Sorrick, Sgt. Stanford responded by telling him to "keep writing ARP's and see what happens, you'll see!" *Id.* ¶ 8.

Later, Sorrick reported to work in the MCE shop within ECI. He asserts that the MCE office clerk, who was another inmate, told him that Sgt. Stanford had called the MCE shop and said she was going to "get" Sorrick and that "she was really mad." *Id.* ¶ 12. After the lunch break, MCE Assistant Plant Manager George Hornung conducted a check to ensure that each worker's assigned tools were present. Although Sorrick's tools were all verified to be present, after he made a brief visit to the restroom, he discovered that someone had unlocked and removed the countersink bit from his cordless impact driver. Sorrick notified Hornung immediately, and he and other workers searched for the tool, but it was not found. According to Sorrick, everyone present agreed that he was being set up by someone who had stolen the countersink bit.

Nevertheless, as a result of the missing tool, Sorrick was placed on administrative segregation pending an investigation. Sorrick asserts that the next day, when his property arrived in his administrative segregation cell, it had not been inventoried, and he discovered that property worth $494.98 was missing.

On November 8, 2018, Defendant Major Hance Pepper, an investigator, interviewed Sorrick about ARP No. ECI-2186-18, the grievance that had upset Sgt. Stanford. According to Sorrick, Major Pepper told Sorrick that if he withdrew the ARP, he would not receive a disciplinary infraction relating to the missing countersink bit. When Sorrick asked if he would be able to keep his MCE job if he did so, Major Pepper told him that he should be able to do so. Sorrick therefore agreed to withdraw the ARP. However, Sorrick never received his job back, and on January 8, 2019, he learned that Major Pepper was moving Sorrick out of Housing Unit 3 on D-Tier, in which

he and several other MCE workers resided, and into general population. Later that year, on August 7, 2019, Sorrick learned that Defendant Dan McGarity, an MCE Plant Manager, had encouraged Major Pepper to move Sorrick. According to Sorrick, these actions were taken even though he never received a disciplinary infraction relating to the missing tool, he received no hearing or other due process, and the action violated his MCE contract. According to Sorrick, under applicable policies, if an inmate is found not guilty of a disciplinary infraction, the inmate may receive diminution credits and pay that would otherwise have been earned in the absence of the disciplinary charge.

On January 23, 2019, Sorrick was moved to a general population unit in ECI-Eastside that was a known gang tier. Sorrick asserts that because he has a right shoulder injury that prevented him from physically defending himself, he was then "constantly tormented, bullied, physically assaulted, and extorted financially." *Id.* ¶ 39.

On February 8, 2019, Sorrick requested to be assigned to a preferred job position as an "Inmate Observation Aide" ("IOA") because it was the closest in pay to the MCE job he previously held. *Id.* ¶ 43. Sorrick completed the IOA training in February 2020 and was placed on the waiting list to be hired. He did not begin working for the IOA Department until October 3, 2022.

## II.    ARPs and Related Proceedings

### A.    Retaliation

On November 21, 2018, Sorrick filed ARP No. ECI-2398-18 relating to the alleged retaliation. Defendant Warden Walter West denied the ARP on January 4, 2019. After the DPSCS Commissioner of Correction ("the Commissioner") denied Sorrick's appeal of that denial on January 17, 2019, Sorrick appealed to the Incarcerated Individual Grievance Office ("IIGO") by filing IIGO No. 2019-0367. On April 10, 2019, the IIGO dismissed this appeal.

On May 28, 2019, Sorrick filed a petition for judicial review of the IIGO's decision in the Circuit Court for Somerset County, Maryland ("the Circuit Court"). On September 21, 2019, the Circuit Court remanded the case to the Maryland Office of Administrative Hearings ("OAH") and the IIGO. On February 5, 2020, the OAH conducted a hearing on this matter and issued a decision on February 13, 2020. On June 9, 2021, Sorrick filed a petition for judicial review of that determination with the Circuit Court, which was dismissed on July 13, 2021 as untimely filed.

### B.    Personal Property

On November 5, 2018, Sorrick filed ARP No. ECI-2284-18 relating to his loss of personal property during the move to administrative segregation. After the ARP was denied, Sorrick submitted an appeal to the IIGO in IIGO No. 2019-0203 in which he documented the value of the lost property as $553.54. On August 13, 2019, the OAH conducted a hearing on Sorrick's property claim. Meanwhile, also on August 13, 2019, Sorrick filed a notice of claim with the Maryland State Treasurer pursuant to the Maryland Tort Claims Act seeking $200,000 as compensation for the lost property. That claim was denied on November 13, 2019. On September 19, 2019, Sorrick received three legal books that were lost during the October 24, 2018 move but had since been found in the ECI property room.

On February 5, 2020, at the conclusion of the OAH hearing, an administrative law judge ("ALJ") granted Sorrick $39.96 in compensation for the property claims, consisting of the value of his lost CD player. He received this payment on October 28, 2020.

### III.    Attorney Visit

On October 25, 2021, Sorrick filed a civil action in the District Court for Somerset County, Maryland relating to the same alleged retaliation discussed above. For purposes of that case, Sorrick sought and received court-appointed counsel, Jan-Paul Lukas. According to Sorrick, on

Sunday, September 4, 2022, Lukas arrived at ECI 30 minutes before a pre-approved 11:00 a.m. legal visit. However, Lukas was told that no arrangements had been made for the visit. When no arrangements could be made by 11:20 a.m., Lukas left ECI. Sorrick asserts that other inmates were receiving personal visits that day, and that the attorney visitation rooms were not being used at that time. On September 7, 2022, Sorrick verified with Captain Green that his September 4, 2022 legal visit with Lukas had been approved.

Later, Sorrick learned by speaking with correctional officers about this incident that the officers running the visitation room had not been informed in advance of the legal visit, so there was no correctional officer assigned to prepare the room for an attorney visit. According to ECI records, a correctional officer, upon learning of the scheduled visit, went to the visitation area and opened up a room for the legal visit, but by then Lukas had left ECI. Lukas or other attorneys were approved for attorney visits with Sorrick on multiple other occasions in 2022 and 2023, including on May 22, 2022; June 5, 2022; August 4, 2022; August 26, 2022; August 27, 2022; August 28, 2022; September 25, 2022; October 10, 2022; February 25, 2023; March 4, 2023; and April 3, 2023.

## IV.    The Complaint

On March 7, 2024, Sorrick filed the original Complaint in this case. Construed liberally, the presently operative Amended Complaint alleges the following claims: (1) retaliation in violation of the First Amendment to the United States Constitution, based on the loss of Sorrick's job at the MCE shop in December 2018, Sorrick's transfer out of his housing unit in January 2019, and other adverse actions; (2) a deprivation of property without due process of law, in violation of the Fifth and Fourteenth Amendments, based on the loss of personal property during the housing transfer; and (3) a denial of access to courts in violation of the First Amendment, based on the

6

failure to provide an attorney visit on September 4, 2022. Sorrick also references violations of the Eighth Amendment right to be free from cruel and unusual punishment; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2; and the Americans with Disabilities Act, 42 U.S.C. §§ 12111–12117, but he provides no allegations in the Amended Complaint that would support any such claims, and any additional facts offered in other filings may not be considered, so any Eighth Amendment, Title VII, and ADA claims will be dismissed for failure to state a claim. *See Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998). Overall, Sorrick seeks damages of $1,204,740.14 as well as declaratory and injunctive relief.

## DISCUSSION

### I.    Motion for Appointment of Counsel

As an initial matter, Sorrick has filed his third Motion for Appointment of Counsel ("the Third Motion"). There is no absolute right to appointment of counsel. *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). A federal district court, in its discretion, may appoint counsel in a civil case when an indigent party presents exceptional circumstances. *See* 28 U.S.C. § 1915(e)(1); *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). Based upon a "fact specific, two-part inquiry," a court may find exceptional circumstances if it finds that (1) "the plaintiff 'has a colorable claim'"; and (2) "considering the claim's objective complexity and the plaintiff's subjective abilities," the plaintiff "lacks the capacity to present it." *Jenkins v. Woodard*, 109 F.4th 242, 247 (4th Cir. 2024) (quoting *Whisenant v. Yuam*, 739 F.2d 160, 162 (4th Cir. 1984)). Having reviewed and denied the prior such motions, the Court again finds that that appointment of counsel is not warranted because the issues in this case are not overly complex, and Sorrick has throughout this case filed lengthy

and detailed submissions that demonstrate that he has the ability to represent himself in this case. *See* ECF Nos. 10, 32 (denying the previous Motions for Appointment of Counsel).

In this instance, Sorrick asserts the additional argument that he has nerve issues that prevent him from writing out his filings by hand. However, he submits no medical evidence in support of this claim and instead provides affidavits from two other inmates attesting that Sorrick had arm and shoulder pain during time periods ending in 2018, almost eight years ago, which are therefore not probative. Even assuming that Sorrick has such a condition, that limitation does not warrant appointment of counsel, whose function is different from an individual who can assist with writing filings by hand. Particularly where Sorrick has found the means within ECI by which to submit the typed, multi-paged, Third Motion, the Court does not find that appointment of counsel is warranted and will thus deny the Third Motion.

## II.    Motions to Dismiss or, in the Alternative, Motions for Summary Judgment

In their Motions, Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. In support of their Motions, Defendants argue that any claims against Defendants in their official capacities are barred by the Eleventh Amendment; Defendants ECI and MCE, as well as the other Defendants in their official capacities, are not persons amenable to suit under § 1983; the retaliation claim is barred by the statute of limitations; the retaliation claim is barred by the doctrine of collateral estoppel; Sorrick has failed to state a viable due process claim based on the loss of his personal property; and the claim relating to the missed attorney visit fails to state a valid First Amendment access-to-courts claim.

### A.    Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is

plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Defendants have titled their motions as Motions to Dismiss or, in the Alternative, Motions for Summary Judgment. Typically, when deciding a motion to dismiss under Rule 12(b)(6), a court considers only the complaint and any attached documents. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the titles of Defendants' Motions. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must

file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). Sorrick has not submitted such a filing and has not otherwise asserted that he needs additional discovery in order to address the Motions. The Court therefore will construe Defendants' Motions as motions for summary judgment for purposes of the arguments requiring consideration of the exhibits.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motions, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

### B.    State Agencies and Official Capacity Claims

Defendants seek dismissal of the claims against ECI and MCE, which are entities operated by the State of Maryland, because as state entities, they are not proper parties for a § 1983 claim. Section 1983 provides in relevant part that: "Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the

deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." *Id.* (emphasis added). A State or a state agency is not a "person" within the meaning of § 1983 and thus may not be sued under this provision. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1999). Likewise, where the individual defendants are state officials, to the extent that Sorrick is asserting claims against any of them in their official capacities, such claims are deemed to be claims against the State itself and are thus also not suits against "persons" as required by § 1983. *See id.* at 71. Accordingly, the Court will dismiss the claims against ECI and MCE and any claims against the individual defendants in their official capacities.

### C.    Retaliation Claim

Defendants assert that Sorrick's claims based on the alleged retaliation for filing an ARP, including his removal from his job, his housing transfer, and other alleged adverse consequences, are barred by the statute of limitations. As § 1983 does not include a limitations period, a court is to apply the limitations period applicable to the most analogous state law cause of action. *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379, 388 (4th Cir. 2014). For a § 1983 claim arising in Maryland, the applicable statute of limitations is the three-year general civil statute applicable to personal injury suits. *See Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 187 (4th Cir. 1999) ("It is well-settled that sections 1983 and 1985 borrow the state's general personal injury limitations period, which in Maryland is three years."); Md. Code Ann., Cts. & Jud. Proc. § 5–101 (West 2020) ("A civil action at law shall be filed within three years from the date it accrues . . . .").

Although the Maryland statute of limitations applies, when a cause of action has accrued is a federal question. *Nassim v. Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc).

11

Accrual occurs when "the plaintiff knows or, in the exercise of due diligence, should have known both the existence and the cause of his injury." *Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d 738, 742 (4th Cir. 1990) (en banc). Thus, a claim accrues "when the plaintiff possesses sufficient facts about the harm done . . . that reasonable inquiry will reveal [the] cause of action." *Nassim*, 64 F.3d at 955. Here, Sorrick was necessarily aware of such facts as of November 21, 2018, when he filed ARP No. ECI-2398-18 in which he alleged retaliation. He had additional facts supporting such a claim when on January 7, 2019, he was told he would not get his MCE job back, and that he was going to be transferred out of his housing unit. Thus, by the time he filed the Complaint in this Court on March 7, 2024, over five years had elapsed since his claims accrued.

Under federal equitable tolling principles, a court can decline to enforce a statute of limitations period against a party where "due to circumstances external to the party's own conduct . . . it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Battle v. Ledford*, 912 F.3d 708, 718 (4th Cir. 2019) (quoting *Raplee v. United States*, 842 F.3d 328, 333 (4th Cir. 2016). However, equitable tolling is reserved for "rare instances." *Id.* For purposes of a federal § 1983 lawsuit, the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires exhaustion of administrative remedies before filing suit. *Id.*; *Ross v. Blake*, 578 U.S. 632, 642 (2016). Accordingly, the United States Court of Appeals for the Fourth Circuit has held that, as a matter of equitable tolling principles, if a plaintiff prisoner is diligently pursing available rights, the statute of limitations on the prisoner's § 1983 claim should be tolled for the time period during which the prisoner was pursuing the PLRA's required exhaustion of administrative remedies. *See Battle*, 912 F.3d at 715; *see also Fauconier v. Clarke*, 966 F.3d 265, 275 (4th Cir. 2020).

12

In the Maryland state prison system, exhaustion of administrative remedies requires that a prisoner first file an ARP with the warden of the prison within 30 days of the incident at issue. *See* Md. Code Regs. 12.02.28.05(D)(1) (2025) (requiring filing with the "managing official"); Md. Code Regs. 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for the management of a correctional facility"); Md. Code Regs. 12.02.28.09(B) (setting the 30-day deadline). Second, if the ARP is denied, or the prisoner does not receive a timely response, the prisoner must file an appeal with the Commissioner of Correction within 30 days. *See* Md. Code Regs. 12.02.28.14(B)(5). If that appeal is denied, the prisoner must file a further appeal within 30 days to the IIGO. *See* Md. Code Ann., Corr. Servs. § 10–206(a) (LexisNexis 2025); Md. Code Regs. 12.07.01.05(B).

When filing with the IIGO, a prisoner is required to include copies of the following: the ARP, the warden's response to the ARP, the appeal to the Commissioner of Correction, and the Commissioner's response to that appeal. *See* Md. Code Regs. 12.07.01.04(B)(9)(a). If the submission to the IIGO is determined to be "wholly lacking in merit on its face," the IIGO may "dismiss [it] without a hearing or specific findings of fact." Md. Code Ann., Corr. Servs. § 10–207(b)(1); *see also* Md. Code Regs. 12.07.01.06(B). Such an order of dismissal constitutes the final decision of the Secretary of the DPSCS for purposes of judicial review. *See* Md. Code Ann., Corr. Servs. § 10–207(b)(2)(ii). However, if the IIGO deems a hearing to be warranted, the hearing is conducted by an ALJ of the OAH. *See id.* § 10–208(a); Md. Code Regs. 12.07.01.07(A)(3).

A decision of the ALJ denying all relief is considered a final agency decision. *See* Md. Code Ann., Corr. Servs. § 10–209(b)(1)(ii); Md. Code Regs. 12.07.01.10(A)(2). However, if the ALJ concludes that the complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency decision within 15

13

days after receipt of the ALJ's proposed decision. *See* Md. Code Ann., Corr. Servs. § 10–209(c)(1); Md. Code Regs. 12.07.01.10(B).

A prisoner may seek judicial review of a final agency decision by a Maryland state court. *See* Md. Code Ann., Corr. Servs. § 10–210(a). A prisoner need not, however, seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g., Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court."); *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005) (quoting *Pozo*); *see also Ali v. Simmons*, No. 21-1829, 2023 WL 4085758, at *4 (6th Cir. Apr. 4, 2023) (holding that a petition for judicial review of a hearing officer's decision, which was not required for administrative exhaustion under the PLRA, did not continue to toll the limitations period on a § 1983 claim).

Here, Sorrick filed an ARP relating to the alleged retaliation, ARP No. ECI-2398-18, on November 21, 2018, appealed the Warden's denial of that ARP to the Commissioner, and then appealed that denial to the IIGO on March 6, 2019. The IIGO reviewed the filing, found that it lacked material facts necessary to support a retaliation claim, and dismissed Sorrick's claim on April 10, 2019. The time period from November 21, 2018 to April 10, 2019 is therefore properly tolled for purposes of the statute of limitations. *See Battle*, 912 F.3d at 720. However, because the IIGO's ruling completed the required steps for exhaustion of administrative remedies, the time after that date during which Sorrick was seeking judicial review in the Maryland state courts is not properly tolled. *See, e.g., Pozo*, 286 F.3d at 1024.

Even if the Court were to conclude that the administrative exhaustion process continued when, after Sorrick sought judicial review in the Circuit Court, the matter was remanded to the IIGO for a hearing, that hearing was held before the OAH on February 5, 2020, and the ALJ issued

14

a decision on February 13, 2020. Because the ALJ concluded that the grievance was without merit, the ALJ's decision constituted a final decision for purposes of judicial review. *See* Md. Code Ann., Corr. Servs. § 10–209(b)(1)(ii); Md. Code Regs. 12.07.01.10(A)(2). Thus, at most, the time period up to February 13, 2020, could be tolled. Affording Sorrick this most generous of the possible accrual dates, with this tolling, the limitations period expired on February 13, 2023, over a year before Sorrick's Complaint was filed in this Court on March 4, 2024. *See Houston v. Lack*, 487 U.S. 266, 270 (1988) (stating that self-represented prisoner pleadings are deemed filed when they are delivered to prison authorities for mailing to the courts).

Any further equitable tolling is not warranted. To the extent that Sorrick may argue that he was not aware that his additional steps of pursuing judicial review in the state courts did not toll the limitations period, or that his appointed counsel did not properly advise him in relation to his case filed in state district court, ignorance of the law or errors by counsel ordinarily do not warrant equitable tolling. *See, e.g., United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) ("[E]ven in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling."); *Rouse v. Lee*, 339 F.3d 238, 248–29 (4th Cir. 2003) (holding that an attorney's mistake in interpreting a statute of limitations does not present extraordinary circumstances that warrant equitable tolling, particularly where that mistake is attributable to the plaintiff under standard agency principles). Particularly where Sorrick has received not only a full hearing and decision before the OAH, but also had the opportunity to, and in fact did, pursue judicial review in the state court, the Court does not find that equity requires further tolling of the statute of limitations. Accordingly, the Court finds that Sorrick's First Amendment retaliation claim and any related claims arising from the same factual episode are time-barred and will be dismissed.

Finally, even if the retaliation claim were not time-barred, the Court finds that it is separately barred by the doctrine of collateral estoppel because the issue of whether Sorrick was subjected to retaliation for filing an ARP by Sgt. Stanford and others was fully litigated in the OAH. Specifically, in the OAH decision, the ALJ found that the decision to remove Sorrick from his job was not retaliatory, and that instead Sorrick was removed from the position because he was "negligent in safekeeping his assigned tools." OAH Decision at 11, Mot. Ex. A, ECF No. 29-3.

Generally, collateral estoppel based on a Maryland state decision applies when: (1) the issue in question is identical to the issue decided in the prior adjudication; (2) the issue was decided by a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior adjudication; and (4) that party was given a fair opportunity to be heard on the issue. *See Garrity v. Md. State Bd. of Plumbing*, 135 A.3d 452, 459 (Md. 2016). The final decision of an agency can have preclusive effect if the agency is performing quasi-judicial functions. *Id.* at 465. Specifically, agency decisions are granted preclusive effect where: "(1) the agency acted in a judicial capacity; (2) the issue presented to the fact finder in the second proceeding was fully litigated before the agency; and (3) resolution of the issue was necessary to the agency's decision." *Id.* Final decisions of the OAH can meet these requirements. *See, e.g., id.* at 456, 466 (granting preclusive effect to an administrative decision of the OAH, which had conducted an administrative hearing on behalf of the Consumer Protection Division of the Maryland Office of the Attorney General). Here, because the OAH proceeding was a full hearing before an ALJ during which Sorrick could present his case and evidence, the factual issue of retaliation was actually fully litigated before the OAH, and the resolution of the retaliation issue was necessary to the OAH's decision, such an administrative decision can be granted preclusive effect where the other elements of collateral estoppel are met. *See id.* at 466.

16

As to those elements, the retaliation issue presented to the OAH is identical to the retaliation issue raised here, and it was decided in a judgment on the merits by the OAH that became final where Sorrick had the opportunity to seek judicial review of that decision in Maryland state court, and the Circuit Court dismissed his appeal. Sorrick was a party to the OAH proceeding, and where he received a full hearing in which he was permitted to testify and present other witnesses and evidence, he had a fair opportunity to litigate the issue. Because the finding of a lack of retaliation effectively precludes Sorrick from succeeding on his retaliation claim, the Court finds that the retaliation claim is also precluded by the doctrine of collateral estoppel and will grant the Motions as to that claim.

### D.    Property Claim

Defendants also seek dismissal of Sorrick's due process claim alleging that some of his personal property was lost or stolen when he was placed in administrative segregation in October 2018. The Supreme Court has held that either an intentional or negligent deprivation of property by a prison official does not implicate the Due Process Clause if there is a meaningful post-deprivation remedy available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Generally, the administrative grievance process available to Maryland prisoners, which also provides for an OAH hearing and judicial review in state court, has been deemed to be a meaningful post-deprivation remedy. *See French v. Allegany Cnty.*, No. CCB-11-2600, 2013 WL 4049682, *4 (D. Md. Aug. 8, 2013). Further, the right to seek damages and injunctive relief in Maryland courts in a tort action also constitutes an adequate post-deprivation remedy for inmates in Maryland prisons. *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982) ("[T]here is no question that the relief available to plaintiff in state court is adequate."). Specifically, for a claim of lost property, judges in this District have held that the Maryland Tort Claims Act provides an adequate post-deprivation

remedy. *See Howes v. Foxwell*, No. DKC-17-2598, 2018 WL 2389060, at *4 (D. Md. May 25, 2018) (finding that the MTCA and the IIGO provided adequate post-deprivation remedies for an inmate who had personal items and legal documents lost after a search of his cell); *Fuller v. Warden*, No. WMN-12-43, 2012 WL 831936, at *2 (D. Md. Mar. 8, 2012) (finding that the MTCA provided an adequate post-deprivation remedy to a prisoner who alleged that his personal property in his cell, including legal materials, were improperly confiscated or lost when he was moved to segregation); *Resper v. Schurg*, No. PJM-13-1278, 2014 WL 3345131, at *2 & n.2 (D. Md. July 7, 2014) (finding that the MTCA and IIGO provided adequate post-deprivation remedies for an inmate who alleged that correctional personnel improperly withdrew funds from his prison account). Maryland state inmates may sue correctional officers and other prison officials in tort actions in Maryland courts, subject to the requirements and restrictions of the MTCA. *See, e.g., Cooper v. Rodriguez*, 118 A.3d 829, 860 (Md. 2015) (holding that a prison official could be liable under the MTCA for acts involving gross negligence).

Here, Sorrick acknowledges in the Amended Complaint that he pursued a claim for compensation for the property loss through the administrative process, an OAH hearing, and state judicial review, and he also sought to pursue an MTCA claim. As a result, he was awarded the depreciated value of his CD player, and three of his books were returned to him. While he may not have received all of the relief he sought, he has not provided a basis to conclude that there is no adequate post-deprivation remedy available under state law. The Court will therefore grant the Motions as to the due process claim relating to the loss of personal property.

### E.    Access-to-Courts Claim

Defendants also seek dismissal of Sorrick's claim that his missed September 4, 2022 attorney visit violates the First Amendment right to access to courts. Generally, prisoners have a

18

"right of access to the courts" under the First Amendment to the Constitution. *Bounds v. Smith*, 430 U. S. 817, 821 (1977). "[A] prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) (quoting *Lewis v. Casey*, 518 U.S. 343, 355 (1996)). Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" or "arguable" claim was frustrated or impeded because of the denial of access to courts. *Lewis v. Casey*, 518 U.S. 343, 352–53 & n.3 (1996). The complaint must contain a sufficient description of the predicate claim to permit an assessment of whether it is "nonfrivolous" or "arguable." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The complaint also must contain specific allegations of the injury arising from the denial of access to the courts and articulate specifically how the litigation was harmed, such as that the claim was lost or rejected. *See Ali v. District of Columbia*, 278 F.3d 1, 3, 8 (D.C. Cir. 2002) (holding that an allegation that the failure to transport a prisoner's legal documents to his prison caused an unspecified "open case" to be "set back" did not state a claim of actual injury from a denial of access to courts); *Cody v. Weber*, 256 F.3d 764, 769–70 (8th Cir. 2001) (holding that lack of access to computer disks containing the prisoner's legal materials did not establish a denial of access to courts because the vague allegation that the stored data would "set him free" was insufficient to establish actual injury). Generally, allegations of delay in legal proceedings that do not result in "actual substantial prejudice to specific litigation" are insufficient to state a claim for denial of access to courts. *See Johnson v. Barczak*, 338 F.3d 771, 773 (7th Cir. 2003).

Here, the record demonstrates that upon learning of Lukas's arrival on September 4, 2022, ECI correctional staff actually went to the attorney visitation area in order to take steps to provide

the attorney visit, but they were not able to do so before Lukas left ECI 20 minutes after the originally scheduled attorney visit time. It also demonstrates that Sorrick received attorney visits from either Lukas or other attorneys on eight other occasions during 2022, apparently without incident. Even if this set of facts could be construed as demonstrating a denial of access to an attorney visit, Sorrick's claim fails because he has not established a connection between the single missed attorney visit and actual prejudice to a specific litigation as required for a viable access-to-courts claim. Particularly where the ECI records demonstrate that Lukas returned for two attorney visits in the weeks following September 4, 2022, specifically on September 25, 2022 and October 10, 2022, and then had attorney visits in each of February, March, and April 2023, the record does not support the conclusion that the missed attorney visit caused any such prejudice. The Court will therefore grant summary judgment to Defendants on this claim.

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss or, in the Alternative, for Summary Judgment will be GRANTED, and Sorrick's Motion for Appointment of Counsel will be DENIED. A separate Order shall issue.

Date: March 19, 2026

THEODORE D. CHUANG
United States District Judge

20